# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ELLEN CONDRON,<br>Plaintiff | No. 3:13cv818 |
| v. | (Judge Munley) |
| DEBRA J. FACCIOLO and THE<br>PENNSYLVANIA STATE POLICE,<br>Defendants | |

## MEMORANDUM

Before the court for disposition is defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This matter is fully briefed and ripe for disposition. For the following reasons, the court will grant defendants' motion to dismiss.

## BACKGROUND

The instant civil rights lawsuit arose from an alleged poor employment reference. Specifically, Plaintiff Mary Ellen Condron (hereinafter "Condron") claims that Defendant Debra Facciolo (hereinafter "Facciolo") vindictively attacked and destroyed her character when giving an employment reference pertaining to a University of Scranton Public Safety position.[1] (Doc. 1, Compl. (hereinafter "Compl.") ¶ 1).

On September 3, 2011, the University of Scranton's Public Safety

---

[1] Facciolo is the Pennsylvania State Police Labor Relations Director. (Compl. ¶ 1).

Department sought to hire an unarmed driver/security guard. (Id. ¶ 16). Condron applied for and was offered this position. (Id. ¶¶ 17-18). Condron's employment offer, however, was conditioned on Condron passing a background check. (Id. ¶ 19).

Kevin Rude, a background investigator with the University of Scranton, met with Condron on January 4, 2012 to discuss the results of his investigation. (Id. ¶ 20). Rude advised Condron that her personal references were perfect. (Id. ¶ 21). Rude also stated that Condron's professional references were excellent "with the exception of the Pennsylvania State Police." (Id.)

Rude advised Condron that he spoke with Facciolo. (Id. ¶ 22(c)). Facciolo told Rude "that while [Condron] was a great dispatcher, she had issues" including the following: (1) Condron refused to get help for her medical conditions; (2) Condron had problems with the command structure and listening to supervisors; and (3) Condron was also dropped by her union because she was combative. (Id.)

At the conclusion of the January 4, 2012 interview with Condron, Rude, based on instructions from the University of Scranton's Director of Public Safety, recommended this position to Condron based on her experiences and references. (Id. ¶ 27). On January 17, 2012, however, Condron received a letter from the University of Scranton stating that she was no longer being considered for employment because of the

2

background investigation.  (Id. ¶ 28).

Subsequent to receiving her denial of employment letter, Condron spoke with the University of Scranton's Director of Public Safety.  (Id. ¶ 29).  The Director advised Condron that she's "a nice person, and has a great work ethic and more than enough experience, but he decided that [Condron] would not be a good fit with the [Public Safety] Department."  (Id.)  The Director also stated that Condron would never be hired because she would never "ever pass the background check."  (Id. ¶ 30).

In response, Condron filed the instant complaint pursuant to 42 U.S.C. § 1983 (hereinafter "section 1983") against the Pennsylvania State Police and Facciolo (hereinafter "defendants").  Condron's complaint alleges four claims.  First, Condron asserts a First Amendment retaliation claim against the defendants.  Second, Condron avers that the defendants treated similarly situated former Pennsylvania State Police employees differently in contravention of the Fourteenth Amendment.  Third, Condron alleges that the defendants deprived her of a constitutionally protected property interest in her right to obtain employment in violation of the Fourteenth Amendment.  Fourth, Condron asserts a state law tortious interference with a contract claim against the defendants.  Defendants move to dismiss the complaint.  The parties then briefed the issues bringing the case to its present posture.

3

**JURISDICTION**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief). The court has supplemental jurisdiction over Condron's state law claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**LEGAL STANDARD**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir.

4

1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**DISCUSSION**

Defendants present the court with five issues.  The first issue involves immunity.  Defendants' next four issues pertain to Condron's individual claims.  The court addresses these issues *in seriatim*.

**I. Eleventh Amendment Immunity**

Initially, defendants contend that Eleventh Amendment immunity

5

shields them from Condron's federal claims.  As noted above, federal jurisdiction is premised on the fact that several of Condron's claims are brought pursuant to section 1983.  Section 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under color of state law.  Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  Id.  Here, the parties do not dispute the defendants were acting under color of state law.  Rather, the parties disagree as to whether the defendants deprived Condron of her constitutional rights.  Defendants argue that they cannot be held liable because they are protected by Eleventh Amendment immunity.  After a careful review, the court agrees in

part.

The Eleventh Amendment to the United States Constitution bars damages claims against both state agencies that do not waive sovereign immunity and state agencies' employees sued in their official capacity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Specifically, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Eleventh Amendment sovereign immunity protects unconsenting states and state agencies from suit brought in federal court by its own citizens. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009). This protection extends to state agencies and departments, such as the Pennsylvania State Police. See Capogrosso, 588 F.3d at 185. Thus, the court will grant defendants' motion to dismiss all claims against the Pennsylvania State Police.

Eleventh Amendment immunity also applies to state officials, such as Defendant Facciolo, sued in their official capacity. The immunity applies in these situations because the state is the real party in interest, resulting in recovery from the state treasury. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Accordingly, to the extent that the Defendant Facciolo is sued

in her official capacity, she will be dismissed from this case. Facciolo will remain in the case to the extent that she is sued in her individual capacity for actions she is alleged to have taken under color of state law.

## II. Specific causes of action - Failure to state a claim

As we have found that immunity does not shield Defendant Facciolo from liability, the court next addresses Condron's specific claims. Condron's two-count complaint contains three federal claims and one state law claim. Condron's federal claims include First Amendment retaliation, Fourteenth Amendment equal protection and Fourteenth Amendment due process. Condron's sole state law cause of action is a claim for tortious interference with prospective contractual relations. The court will first address Condron's federal claims, and if necessary, discuss Condron's state law claim.

### A. First Amendment retaliation

Count One of Condron's complaint asserts a cause of action for First Amendment retaliation. Condron alleges that Facciolo's poor employment reference was in retaliation for a civil rights lawsuit Condron filed against the Pennsylvania State Police in 2010.

To prove a First Amendment retaliation claim, a plaintiff must prove "(1) that she engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Miller v. Mitchell, 598 F. 3d 139, 147 (3d Cir.

2010); (quoting Eichenlaub v. Twp. of Ind., 385 F. 3d 274, 282 (3d Cir. 2004). The first element is an issue of law; the second and third are questions of fact. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001); Johnson v. Lincoln Univ., 776 F.2d 443, 454 (3d Cir. 1985). The instant motion to dismiss focuses on the first element.

The determination of whether an individual engaged in constitutionally protected activity "applies differently to private and public employment." Houston v. Twp. of Randolph, 934 F. Supp. 2d 711, 726 (D.N.J. 2013). A First Amendment retaliation claim under the private individual test requires that plaintiffs show: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

On the other hand, "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill v. Borough of Kutztown, 455 F.3d at 241-42 (3d Cir. 2006) (citing Garcetti v. Ceballos, 547 U.S. 410, 419 (2006)).

9

Here, Condron contends that the private retaliation test applies because she filed the instant action as a private citizen. Condron, however, conflates the general right to file a lawsuit under the Petition Clause of the First Amendment with her burden to establish "protected activity" within the meaning of a First Amendment retaliation claim. While Condron was a private citizen when she filed the instant action, Condron alleges that she was **retaliated against for filing a prior civil rights lawsuit**. Thus, the "protected activity" is not the filing the of the instant action. Rather, the protected activity relates back to Condron's prior civil rights lawsuit.

A review of Condron's prior civil rights lawsuit demonstrates that it pertains to her public employment with the Pennsylvania State Police. See Condron v. Evanchick, No. 3:10-CV-2506, 2013 WL 4538786, at *1-3 (M.D. Pa. Aug. 27, 2013). As such, the court will utilize the public employee First Amendment Test.

The law provides that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). The United States Supreme Court has explained that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public

concern." Id. at 417.

A public employee's speech is protected under the First Amendment's Speech Clause when the speech pertains to "a matter of public concern, and the employee's interest in expression . . . [is] not outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." Watters v. City of Phila., 55 F.3d 886, 892 (3d Cir. 1995); see also Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2494, 2501 (2011) (stating that the First Amendment's Petition Clause protects the rights of public employees to appeal to courts when a public employee's petition relates to a matter of public concern). Public employee speech and petitioning are considered to be on a matter of public concern "if it can be fairly considered as relating to any matter of political, social, or other concern to the community. This determination turns on the content, form and context of the public employee's speech." Green v. Phila. Hous. Auth.,105 F.3d 882, 886 (3d Cir. 1997) (internal quotation marks and citations omitted); Borough of Duryea, Pa., 131 S. Ct. at 2501.

In the present case, Condron alleges that the employment grievances contained within her prior 2010 lawsuit against the Pennsylvania State Police constitute protected speech and petitioning activity. The court, however, previously found that Condron's employment

grievances were not protected speech and petitioning activity for three reasons:

> First, Condron's grievances concern nothing more than the terms and conditions of her employment and individualized workplace grievances do not relate to matters of public concern. See Duryea, 131 S. Ct. at 2501. Second, Condron's grievances were not communicated to the public, nor is there any indication that Condron intended them to be made public. Id. Rather, Condron's grievances were filed pursuant to the normal procedure for handling internal employment disputes. Third, Condron was acting pursuant to her official duties when she filed her grievances and not acting as a private citizen. See Edwards, 372 U.S. at 235-38.

Condron v. Evanchick, 2013 WL 4538786, at *5. Thus, Condron cannot now allege that her prior lawsuit contained protected activity when the court previously found that it did not. Accordingly, defendants' motion to dismiss Condron's First Amendment retaliation claim will be granted.[2]

### B. Equal Protection Claim

Condron next asserts that "other employees similarly situated . . . were not denied the opportunity to move on and acquire other employment after working for the Pennsylvania State Police." (Compl. ¶ 37). Condron fails to assert membership in a protected class, therefore, Condron advances her equal protection claim under the "class of one"

---

[2] The court will deny this claim with prejudice as an amendment would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

doctrine.

The Supreme Court of the United States has "explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (quoting Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 445 (1923)). Supreme Court jurisprudence has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (citations omitted).

In the instant case, Condron failed to aver that she received different treatment from other former Pennsylvania State Police employees that filed constructive discharge lawsuits. Additionally, Condron failed to allege that former Pennsylvania State Police employees who filed constructive discharge lawsuits received positive job references for subsequent background checks. Moreover, Condron's complaint is devoid of any allegations pertaining to other Pennsylvania State Police employee lawsuits. Because the complaint's allegations are not sufficient for the court to analyze Condron's equal protection claim, the court will dismiss

13

this claim without prejudice to Condron filing an amended complaint.

**C. Due Process**

Condron also alleges that Facciolo violated her Fourteenth Amendment due process rights pertaining to her protected property interest in future employment. (See Compl. ¶ 37). Facciolo maintains that Condron fails to allege a violation of her Fourteenth Amendment due process rights. After careful consideration, the court finds that Condron failed to state a substantive due process claim as a matter of law.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. AMEND. XIV. The substantive due process clause is a "component of the [Fourteenth Amendment] that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). However, "[t]he history of substantive due process counsels caution and restraint[,]" and "[e]ach new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (citations and internal quotations omitted).

To establish a substantive due process claim, "'a plaintiff must prove [1] the particular interest at issue is protected by the substantive due process clause and [2] the government's deprivation of that protected interest shocks the conscious.'" Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 190 (3d Cir. 2009) (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)). When the challenged state action is non-legislative, courts assessing whether the due process clause protects a particular interest "look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution." Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000). The Third Circuit Court of Appeals provides that "[f]undamental rights are rights that are 'deeply rooted in the Nation's history and traditions . . . [and] interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'" Wrench Transp. Sys., Inc. v. Bradley, 340 F. App'x 812, 815 (3d Cir. 2009) (quoting Nicholas, 227 F.3d at 143).

Condron submits that she adequately stated a violation of her fundamental right to obtain future employment. She claims that Kevin Rude, a background investigator with the University of Scranton, recommended her for a public safety position. (Compl. ¶¶ 20, 27). On January 17, 2012, however, Condron received a letter from the University of Scranton stating that she was no longer being considered for employment because of her background investigation. (Id. ¶ 28).

15

Condron alleges that the University of Scranton was no longer considering her because of Facciolo's poor employment reference. (Id. ¶¶ 22-24). Condron cites no cases in support of this fundamental right, and the court will decline Condron's invitation to find such a right.

The fundamental right Condron claims–the right to obtain future employment–is similar to the intangible employment rights that courts have consistently declined to extend substantive due process protection over. See, e.g., Siegert v. Gilley, 500 U.S. 226, 233-34 (1991) (holding that substantive due process does not protect defamatory comments that impair an individual's ability to obtain future employment); Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (stating that an at-will employee does not have a legitimate entitlement to continued employment because she serves at the pleasure of her employer); Nicholas, 227 F.3d at 142 (finding that public employment is not a fundamental right entitled to substantive due process protection). Moreover, Condron's substantive due process claim appears to be a disguised duplicate of her state law claim for tortious interference with prospective contractual relations. Therefore, the court finds that Condron has failed to allege a constitutionally protected property interest in her right to obtain future employment and will grant Facciolo's motion to dismiss Condron's

Fourteenth Amendment substantive due process claim.[3]

**D. State law tortious interference with prospective contract**

Facciolo requests that the court decline to exercise supplemental jurisdiction over Condron's state law claim. (Doc. 6, Defs.' Br. in Support Mot. to Dismiss at 15-16). Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997).

Here, the court has dismissed Condron's First Amendment retaliation and Fourteenth Amendment due process claims with prejudice. The court has also dismissed Condron's Fourteenth Amendment equal protection claim without prejudice. Where litigation is in its early stages and the complaint asserts federal question jurisdiction, the district court has "a powerful reason not to continue to exercise [supplemental] jurisdiction" when the federal cause(s) of action in the case are dismissed. Carnegie-

---

[3] The court will deny this claim with prejudice as an amendment would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

17

Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988). Thus, at the present time, the court declines to exercise supplemental jurisdiction over Condron's state law tortious interference with prospective contract claim.

**CONCLUSION**

For the reasons set forth above, Condron's First Amendment retaliation and Fourteenth Amendment due process claims are dismissed with prejudice. Condron's Fourteenth Amendment equal protection claim is dismissed without prejudice to Condron filing an amended complaint within fourteen (14) days that properly asserts this cause of action.[4] If an amended complaint is not filed within that time, this case will be closed. An appropriate order follows.

**Date:   1/9/14**     **s/ James M. Munley**
     **JUDGE JAMES M. MUNLEY**
     **United States District Court**

---

[4] To assert a claim under the "class of one" doctrine, Condron "must allege that (1) the defendant treated her differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill, 455 F.3d at 239. Put another way, to survive a motion to dismiss, a complaint alleging a claim under the "class of one" doctrine must aver, at a minimum, that the defendant intentionally treated the plaintiff differently from others similarly situated and that there was no rational basis for such treatment. Phillips, 515 F.3d at 243.